**ASSOCIATED HARDWARE SUPPLY CO., a corporation, Plaintiff,**

**v.**

**The BIG WHEEL DISTRIBUTING COMPANY, a corporation, Defendant.**

**Civ. A. No. 64-770.**

W. D. Pennsylvania.

Jan. 6, 1965.

Kaufman & Kaufman, Pittsburgh, Pa., for plaintiff.

Paul J. Winschel, Reed, Smith, Shaw & McClay, Pittsburgh, Pa., for defendant.

DUMBAULD, District Judge.

This case arose in the Court of Common Pleas of Allegheny County at No. 367 October Term, 1964 as a foreign attachment or garnishment proceeding. Removal duly followed, the creditor, Associated Hardware Supply Company, being a Pennsylvania corporation and the debtor, The Big Wheel Distributing Company, being a West Virginia corporation.

Plaintiff creditor seeks to recover $40,185.62 as the balance of an open unpaid account for merchandise sold and delivered, together with interest.

Defendant debtor pleaded fraud and counterclaimed, alleging overpayment, and failure of plaintiff to furnish certain promotional assistance in merchandising the goods for profitable resale.

After extensive discovery proceedings, plaintiff on November 5, 1964 filed a motion to dismiss the counterclaim, for judgment on the pleadings and for summary judgment for the amount of the debt and interest.

Extensive briefs have been filed and argument heard. This opinion shall be deemed to contain the Court's findings of fact and conclusions of law.

When the voluminous verbiage with which this case has been surrounded is penetrated and disentangled, the issue is seen to be one of price. Defendant contends that the goods were to be sold at cost plus 10 per cent, whereas plaintiff billed them at dealers' catalogue price (representing a 20 per cent mark-up) less 11 per cent. Defendant's counterclaim is based upon a recomputation at defendant's assumed price of all past transactions between the parties, and much of defendant's voluminous discovery aims to determine plaintiff's costs, which enter into the price as defendant would compute it. Defendant's allegations of fraud and misrepresentation are based on the lack of identity, allegedly asserted by plaintiff, between prices computed under plaintiff's method and defendant's method.

What was the contract between the parties, as shown by the undisputed facts in the record?

Plaintiff in a letter of February 9, 1962 [Ex. A to Complaint] made an offer, subject to a volume of $5,000 per week at catalogue price less 11 per cent discount. Defendant being a new corporate operation, personal liability of Mr. Irving Molever was insisted upon in the letter, together with a request for acknowledgement and signature. Apparently Molever did not sign the letter, but considered himself personally liable and later secured a release from such liability after defendant established a satisfactory payment history.

However, dealings between the parties went ahead. Defendant ordered, received, retained, and paid for a large volume of merchandise, billed at catalogue price less 11 per cent discount.

As calculated in plaintiff's brief, defendant's purchases from February 1962 through May 1964 aggregated $860,000. This figure apparently includes the unpaid amount of $40,185.62, to collect which the present suit was brought. Over $800,000 of merchandise was thus bought and paid for under billings computed under plaintiff's method.

What effect did these dealings of the parties have upon their legal rights, in the light of the Uniform Commercial Code?

We conclude as a matter of law, after consideration of numerous provisions of the Code, that there was a contract between the parties, and that the price was governed by plaintiff's formula.

The alleged misrepresentation or fraud on plaintiff's part we are unable to consider as anything more than normal commercial "puffing" which could not have misled an astute trader such as defendant's negotiator, Mr. Molever. We conclude that defendant simply later decided that its bargain was not a good one and decided not to pay because the agreed price was too high.

Obviously, to say that cost plus 10 per cent is the same as catalogue price less 11 per cent is to indulge in approximation, and the mathematical relationships were as obvious to defendant as to plaintiff. We compute the price on defendant's theory as 1.1 times plaintiff's costs, whereas under plaintiff's system the price would be 1.068 times plaintiff's costs. Whether these are to be treated as substantially identical is obviously a matter of commercial judgment or opinion, and a contract duly negotiated on an assumption that the two methods are to be considered as equivalent can not be set aside for "fraud".

Turning to the Code provisions involved, we begin with 12A P.S. § 1–103 that "Unless displaced by the particular provisions of this Act, the principles of law and equity, including * * * the law relative to * * * fraud, misrepresentation, duress, coercion, mistake * * * or other validating or invalidating cause shall supplement its provisions". This section merely invites us to look to more specific provisions of the Code to determine whether a contract arose between the parties, and what its terms were.

Section 1–201(3) defines "Agreement" as "the bargain in fact as found in the language of the parties or in course of dealing or usage of trade or course of performance or by implication from other circumstances."

Section 1–201(11) defines "Contract" as "the total obligation in law which re-

sults from the parties' agreement as affected by this Act and any other applicable rules of law."

Section 1–205(1) says: "A course of dealing is a sequence of previous conduct between the parties to a particular transaction which is in fact fairly to be regarded as establishing a common basis of understanding for interpreting their words and conduct."

Section 1–205(3) provides: "The parties to a contract are bound by any course of dealing between them."

Section 1–205(4) (a) declares that "Unless contrary to a mandatory rule of this Act: (a) A course of dealing * * gives particular meaning to and supplements or qualifies terms of the agreement."

Section 2–104(1) and (3) defines "merchants" and "between merchants", and we consider both parties to this litigation as knowledgeable merchants.

Section 2–106(2) defines "goods or conduct including any part of a performance" as "conforming" when in accordance with the obligations under the contract.

Section 2–201(1) reads: "Except as otherwise provided in this section a contract for the sale of goods for the price of $500 or more is not enforceable by way of action or defense unless there is some writing sufficient to indicate that a contract for sale has been made between the parties and signed by the party against whom enforcement is sought".

Section 2–201(2) provides that: "Between merchants if within a reasonable time a writing in confirmation of the contract and sufficient against the sender is received and the party receiving it has reason to know its contents, it satisfies the requirements of subsection (1) against such party unless written notice of objection to its contents is given within ten days after it is received."

Section 2–201(3) (c) provides: "A contract which does not satisfy the requirements of subsection (1) but which is valid in other respects is enforceable (c) with respect to goods for which pay-

ment has been made and accepted or which have been received and accepted."

Section 2–202(a) provides that a writing "may be explained or supplemented * * * by course of dealing."

Section 2–204(1) says: "A contract for sale of goods may be made in any manner sufficient to show agreement."

Section 2–204(2) provides that: "Conduct by both parties which recognizes the existence of a contract is sufficient to establish a contract for sale even though the moment of its making cannot be determined."

Section 2–204(3) provides: "Even though one or more terms are left open a contract for sale does not fail for indefiniteness if the parties have intended to make a contract and there is a reasonably certain basis for giving an appropriate remedy."

Section 2–206(1) says: "Unless the contrary is unambiguously indicated by the language or circumstances (a) an offer to make a contract shall be construed as inviting acceptance in any manner and by any medium reasonable in the circumstances."

Section 2–206(3) provides that "The beginning of a requested performance can be a reasonable mode of acceptance."

Section 2–208 provides: "Where the contract for sale involves repeated occasions for performance by either party with knowledge of the nature of the performance and opportunity for objection by the other, any course of performance accepted without objection shall be relevant to determine the meaning of the agreement or to show a waiver or modification of any term inconsistent with such course of performance."

Review of the foregoing Code provisions shows that the Code attaches great weight to the course of dealing of the parties, even in the absence of a written agreement with respect to every term of the contract. Weighing in the light of the Code the conduct of the parties here, it seems clear that the mode of calculating price set forth in plaintiff's letter of February 9, 1962, although not accepted formally by signature of a copy, was adhered to by both parties during an extensive course of dealing, during which defendant received, accepted, and paid for over $800,000 worth of merchandise. This course of dealing must be held applicable and governing with respect to the remaining merchandise which has been received and accepted but not paid for. Judgment should be rendered for plaintiff for the amount due.

There is no genuine dispute of fact with regard to any legally relevant circumstance.

The disputed facts concerning which defendant by discovery and otherwise seeks to inquire extensively relate to matters which are not pertinent, since the law gives effect to the contract recognized by the parties in their course of dealing, regardless of other provisions which the parties might have adopted during their negotiations if they had seen fit to do so.

## JUDGMENT

And now, this 6th day of January, 1965, after argument, for the reasons set forth in the foregoing opinion,

It is ordered, adjudged and finally determined that plaintiff's motion to dismiss defendant's counterclaim be and the same hereby is granted, and that said counterclaim be and the same hereby is dismissed, and that judgment be and it hereby is entered in favor of plaintiff, Associated Hardware Supply Co., a corporation, and against defendant, The Big Wheel Distributing Company, a corporation, in the amount of $40,185.62, together with interest and costs.