**In the Matter of PENN HOUSING CORPORATION et al.**

**No. 72–142 Erie.**

United States District Court,
W. D. Pennsylvania.
Dec. 5, 1973.

**662**

Norman H. Stark, Erie, Pa., for Security-Peoples Trust Co.

Warren W. Bentz, Erie, Pa., John P. Leemhuis, Erie, Pa., for Trustee.

## OPINION AND ORDER ON PETITION FOR REVIEW

WEBER, District Judge.

This is a Petition for Review by the Trustee from an Order of the Bankruptcy Court granting to Security-Peoples Trust Company the accounts receivable and the inventory of the Bankrupt as a secured creditor. The accounts receivable and the inventory have been sold and by stipulation the proceeds are being held pending the determination of this question.

The question at issue is whether the Security-Peoples Trust Company held a perfected security interest in the inventory and accounts receivable.

The transactions between the parties are evidenced by:

(a) a recorded financing statement;

(b) a series of eleven promissory notes;

(c) a letter of the debtor acknowledging the debt and a pledge of security;

(d) a course of dealing between the debtor and the secured party.

Of the eleven promissory notes recited seven (7) are stamped "paid by renewal" and statements contained in them are not being considered as material to this issue. Three notes are material. With respect to another note of June 21, 1971 in the amount of $100,000, this was secured by a mortgage of a leasehold interest. There is no dispute over the perfection of the security interest in this collateral. The mortgage was foreclosed, the sale produced $125,000. The debt on this account being $106,250, the surplus from this sale should be administered by the Bankruptcy Court as an asset of the bankrupt's estate.

There are three remaining notes material to the security interest issue:

(1) April 14, 1971

face amount $126,500

balance due    76,500

Recital: "This note is/is not further secured by: a security interest arising under agreement of even date (if other than specify ———) in the following property.

Inventory Title Mack Tk."

It is not disputed that the security interest in the Mack truck was never perfected by the required delivery of an endorsed title. The proceeds of the sale of the truck were administered as assets of the bankrupt estate.

This note also recites:

"The security interest(s) set forth above secures all other obligations of any of the undersigned to bank which now exist or may rise in the future and covers after acquired property of the undersigned."

This is the only note which refers to after-acquired property.

(2) Jan. 17, 1972

face amount $200,000

Recital: "having deposited herewith as collateral security for said sum and any other liability or liabilities of undersigned to the holder hereof now due or to become due, or that may be hereafter contracted, the following property. *Assignment of Accounts Receivable and Inventory* with further right in the holder hereof to call ——— for additional security should said collateral in the opinion of the holder hereof have declined in value . . ."

(3) April 17, 1972

face amount $175,000

This note contains the same recital with respect to collateral as note No. 2 above.

There is no separate document of even date or any other date purporting to be the security interest referred to in these notes.

■ We deem it immaterial that the note of April 17, 1972 was signed by the debtor as Erie Builders Supply Company because the debtor had registered this name as a name under which it conducted business under the Pennsylvania statute: 15 P.S. § 51 et seq. We, therefore, conclude that this is a document signed by the debtor.

We would not hold any of these notes, standing alone, as sufficient to create a security interest.

■ While a Financing Statement, standing alone, does not create a security interest, but merely gives notice that one may exist, the language contained in a Financing Statement may aid in the determination of whether a security interest was in fact created.

"However, although a standard form financing statement by itself cannot be considered a security agreement, an adequate agreement can be found when a financing statement is considered together with other documents. See In re Carmichael Enterprises, Inc. [334 F.Supp. 94 [N.D.Ga.1971] affd. per curiam 460 F.2d 1405 [5th Cir.

1972]]; In re Fibre Glass Boat Corp. [324 F.Supp. 1054 [S.D.Fla.1971] affd. per curiam 448 F.2d 781 [5th Cir. 1971]]; In re Center Auto Parts, 6 U.C.C.Rep.Serv. 398 [C.D.Cal.1968]; Evans v. Everett [279 N.C. 352, 183 S.E. 109 [1971]]."

In re Numeric Corp., 485 F.2d 1328 [1st Cir. Oct. 17, 1973]; Bankruptcy Law Reports, 11, 15 [1973] § 65,038.

*In re Carmichael,* supra, held that a financing statement and a letter from the creditor upon which the debtor wrote "agreed", taken together, constituted a security agreement.

*In re Center Auto Parts,* supra, the court held that a financing statement and a promissory note reciting, "This note is secured by a certain financing statement", taken together constituted a security agreement.

In the present case the Financing Statement executed by the parties and filed December 12, 1970 recited:

"This Financing Statement covers the following types (or items) of property: Inventory present and after acquired. All present and future accounts receivable submitted, including new accounts receivable whenever acquired. All cash and non cash proceeds are claimed."

As a third leg to the stool the Bank presents a letter from the debtor dated April 28, 1971, to the Bank, containing a recapitulation of the account and including the following statements:

"A. We owe $326,500.00 in demand notes secured by a financing statement pledging the accounts receivable and inventory."

Again, while this letter, standing alone, would not qualify as a security agreement, it may stand as evidence of a security agreement. In *In re Numeric Corp.,* cit. supra, the court considered that a resolution of the board of directors together with a financing statement, constituted a valid security agreement.

"In this case, we find that the financing statement and the directors' resolution, taken together, constitute a security agreement within the meaning of § 9–203(1)(b). The financing statement's itemization of machinery covered by the security agreement fulfills the evidentiary purpose of the statute. The directors' resolution establishes that an agreement in fact existed to give Blank a security interest and thus fulfills the Statute of Frauds purpose of the statute."

The fourth element urged by the Bank to support the finding of a security interest is the course of dealing of the parties. The Code indicates that the course of conduct of the parties is to be considered:

"'Agreement' means the bargain of the parties in fact as found in their language or by implication from other circumstances including course of dealing or usage of trade or course of performance as provided in this Act. (Sections 1–205 and 2–208)."

12A P.S. § 1–201(3)

Comment 3 to this Section echoes this:

"As used in this Act the word is intended to include full recognition of usage of trade, course of dealing, course of performance and the surrounding circumstances as effective parts thereof, and of any agreement permitted under the provisions of this Act to displace a stated rule of law."

Similar language is found in other Sections of the Code and the Commentaries thereto: See 12A P.S. § 1–205 and Comment 1 thereto.

The courts have followed this mandate. Associated Hardware Supply Co. v. Big Wheel Distribution Co., 236 F. Supp. 879, 882 [W.D.Pa.1965], rev. on other grounds 355 F.2d 114 [3rd Cir. 1966]; Congress Financial Corporation v. Sterling Coin Operated Machine Corporation, 456 F.2d 451 [3rd Cir. 1972]; Provident Trademen's Bank and Trust Company v. Pemberton, 196 Pa.Super. 180, 173 A.2d 780 [1961]; Westinghouse Electric Co. v. Murphy, Inc., 425 Pa. 166, 228 A.2d 656 [1967]; In re Walter W. Willis, Inc., Bankrupt, 313 F. Supp. 1274 [E.D.Ohio 1970].

"The parties conducted themselves wholly consistently with an inventory security transaction."

In re United Thrift Stores, Inc., 363 F.2d 11, 14 [3rd Cir. 1966].

■ The essential requirements of a valid security interest are:

1) A writing;

2) signed by the debtor;

3) describing collateral;

4) indicating that the debtor has provided for a security interest.

See: *In re United Thrift Stores, Inc.*, supra.

". . . a separate formal document entitled 'security agreement' is not always necessary to satisfy the signed-writing requirement of § 9–203(1)(b). The draftsmen of the UCC ascribed two purposes to that requirement. One purpose was evidentiary, to prevent disputes as to precisely which items of property are covered by a secured interest. See Uniform Commercial Code § 9–203, Comment 3; J. K. Gill Co. v. Fireside Realty Inc., 262 Or. 486, 488, 499 P.2d 813 [1972]. The second purpose of the signed-writing requirement is to serve as a Statute of Frauds, preventing the enforcement of claims based on wholly oral representations. See Uniform Commercial Code § 9–203, Comment 5."

*In re Numeric Corp.*, cit. supra.

■ Much of the cited authority arises from cases where the issues arose between creditor and debtor. Here, where bankruptcy has intervened, we must consider the protection of intervening creditors. However, the requirement of the filing of a financing statement serves not only to notify subsequent creditors that the secured party which has filed *may* have a security interest in the collateral described, the financing statement is sufficient notice of the interest of the secured party to place

a duty on a subsequent creditor to make further inquiry of the secured party to determine its exact interest. In re Platt, 257 F.Supp. 478, 481 [E.D.Pa.1966].

We also find that the security interest here involved adequately covered future advances by reason of the express description of these in the financing statements. See Cantrill Construction Co., Bankrupt, v. Commercial Bank of Middlesboro, Ky., 418 F.2d 705 [6th Cir. 1969]; In re Kesling et al. v. Bank of America National Trust and Savings Assn., 449 F.2d 770 [9th Cir. 1971].

■ We, therefore, find that the petitioner in the reclamation petition has established a valid security interest in a) Inventory present and after acquired, b) all present and future accounts receivable submitted, including new accounts receivable whenever acquired, and c) all cash and non-cash proceeds of the above. Such security interest is effective from the date of filing of the financing statement, December 12, 1970. In response to the questions certified by the Bankruptcy Judge we hold that:

a) The proceeds of the Sheriff's Sale be apportioned so as to segregate the $125,000 received from the sale of the leasehold interest so that the excess over the debt on that instrument may be applied to assets of the bankruptcy estate. On the other hand, the $255,000 received from the sale of inventory and accounts receivable should be awarded the reclaiming petitioner.

■ b) The liens of the secured party relate back to the security interests herein found and were not obtained within four months of the filing of bankruptcy proceedings when the bankrupt was insolvent, and are not void as a preference under Sec. 67(a)(1) of the Bankruptcy Act.

c and d) All of the collateral of inventory and accounts receivable, including present and future inventory and accounts receivable secured existing debts and future advances, so that all of such collateral was security for all of the debt.

e) The financing statement filed by Penn Housing Corporation perfects the security interest of the note executed in its registered fictitious name of Erie Builders Supply Co.

As a parting note we are compelled to express our observation that the difficulties presented in this matter all arise because of the inept and slipshod manner in which the bank handled and recorded this series of transactions involving large sums of money and property. The Uniform Commercial Code was adopted, to a great extent at the urging of commercial lending institutions and with active participation of their representatives, to provide clear, simple, uncomplicated methods of accomplishing the needs of the commercial community.

> "The Code has eliminated the older, technical and restricted categories of security agreements. Gone are the definitional difficulties and transactional fictions of the chattel-mortgage, the conditional sale, the trust receipt. In their stead is a general set of rules for the creation of a security interest in the secured party."
>
> In re United Thrift Stores, Inc., cit. supra, 363 F.2d at p. 14.

In this case, where standard printed forms were available, we found the use of different forms with different recitals, the failure to excise inapplicable words, the careless insertion of inarticulate language in the blanks provided, reliance on heterogeneous notes and other correspondence and writings forming no integral part of the transaction, all of which presented a bleak picture of the reliability of financial records either to the parties to the transaction, or affected third-parties. We do not deem these objections "technical sophistry" as they are described in petitioner's brief.