*925
 
 OPINION OF THE COURT
 

 ROSENN, Circuit Judge.
 

 This appeal from a district court review of an order in bankruptcy presents a question that has troubled courts since the enactment of Article Nine of the Uniform Commercial Code (U.C.C.) governing secured transactions. Can a creditor assert a secured claim against the debtor when no formal security agreement was ever signed, but where various documents executed in connection with a loan evince an intent to create a security interest? The district court answered this question in the affirmative and permitted the creditor, Zimmerman & Jansen, to assert a secured claim against the debtor, bankrupt Bollinger Corporation in the amount of $150,000. We affirm.
 

 I.
 

 The facts of this case are not in dispute. Industrial Credit Company (ICC) made a loan to Bollinger Corporation (Bollinger) on January 13, 1972, in the amount of $150,000. As evidence of the loan, Bollinger executed a promissory note in the sum of $150,000 and signed a security agreement with ICC giving it a security interest in certain machinery and equipment. ICC in due course perfected its security interest in the collateral by filing a financing statement in accordance with Pennsylvania’s enactment of Article Nine of the U.C.C.
 
 [1]
 

 Bollinger faithfully met its obligations under the note and by December 4, 1974, had repaid $85,000 of the loan leaving $65,-000 in unpaid principal. Bollinger, however, required additional capital and on December 5, 1974, entered into a loan agreement with Zimmerman & Jansen, Inc. (Z&J), by which Z&J agreed to lend Bol-linger $150,000. Z&J undertook as part of this transaction to pay off the $65,000 still owed to ICC in return for an assignment by ICC to Z&J of the original note and security agreement between Bollinger and ICC. Bollinger executed a promissory note to Z&J, evidencing the agreement containing the following provision:
 

 Security.
 
 This Promissory Note is secured by security interests in a certain Security Agreement between Bollinger and Industrial Credit Company . and in a Financing Statement filed by [ICC] . . ., and is further secured by security interests in a certain security agreement to be delivered by Bollinger to Z and J with this Promissory Note covering the identical machinery and equipment as identified in the ICC Agreement and with identical schedule attached in the principal amount of Eighty-Five Thousand Dollars. ($85,000).
 

 No formal security agreement was ever executed between Bollinger and Z&J. Z&J did, however, in connection with the promissory note, record a new financing statement signed by Bollinger containing a detailed list of the machinery and equipment originally taken as collateral by ICC for its loan to Bollinger.
 

 Bollinger filed a petition for an arrangement under Chapter XI of the Bankruptcy Act in March, 1975 and was adjudicated bankrupt one year later. In administrating the bankrupt’s estate, the receiver sold some of Bollinger’s equipment but agreed that Z&J would receive a $10,000 credit on its secured claim.
 

 Z&J asserted a secured claim against the bankrupt in the amount of $150,000, arguing that although it never signed a security agreement with Bollinger, the parties had intended that a security interest in the sum of $150,000 be created to protect the loan. The trustee in bankruptcy conceded that
 
 *926
 
 the assignment to Z&J of ICC’s original security agreement with Bollinger gave Z&J a secured claim in the amount of $65,-000, the balance owed by Bollinger to ICC at the time of the assignment. The trustee, however, refused to recognize Z&J’s asserted claim of an additional secured claim of $85,000 because of the absence of a security agreement between Bollinger and Z&J. The bankruptcy court agreed and entered judgment for Z&J in the amount of $55,000, representing a secured claim in the amount of $65,000 less $10,000 credit received by Z&J.
 

 Z&J appealed to the United States District Court for the Western District of Pennsylvania, which reversed the bankruptcy court and entered judgment for Z&J in the full amount of the asserted $150,000 secured claim. The trustee in bankruptcy appeals.
 
 [2]
 

 II.
 

 Under Article Nine of the U.C.C., two documents are generally required to create a perfected security interest in a debtor’s collateral. First, there must be a “security agreement” giving the creditor an interest in the collateral. Section 9-203(l)(b) contains minimal requirements for the creation of a security agreement. In order to create a security agreement, there must be: (1) a writing (2) signed by the debtor (3) containing a description of the collateral or the types of collateral. Section 9-203, Comment 1. The requirements of section 9 — 203(l)(b) further two basic policies. First, an evidentiary function is served by requiring a signed security agreement and second, a written agreement also obviates any Statute of Frauds problems with the debtor-creditor relationship.
 
 Id.
 
 Comments 3, 5. The second document generally required is a “financing statement,” which is a document signed by both parties and filed for public record. The financing statement serves the purpose of giving public notice to other creditors that a security interest is claimed in the debtor’s collateral.
 

 Despite the minimal formal requirements set forth in section 9-203 for the creation of a security agreement, the commercial world has frequently neglected to comply with this simple Code provision. Soon after Article Nine’s enactment, creditors who had failed to obtain formal security agreements, but who nevertheless had obtained and filed financing statements, sought to enforce secured claims. Under section 9-402, a security agreement may serve as a financing statement if it is signed by both parties. The question arises whether the converse is true: Can a signed financing statement operate as a security agreement? The earliest case to consider this question was
 
 American Card Co. v. H.M.H. Co.,
 
 97 R.I. 59, 196 A.2d 150, 152 (1963) which held that a financing statement could
 
 not
 
 operate as a security agreement because there was no language
 
 granting
 
 a security interest to a creditor. Although section 9-203(l)(b) makes no mention of such a grant language requirement, the court in
 
 American Card
 
 thought that implicit in the definition of “security agreement” under section 9 — 105(l)(h) was such a requirement; some grant language was necessary to “create or provide security.” This view also was adopted by the Tenth Circuit in
 
 Shelton v. Erwin,
 
 472 F.2d 1118, 1120 (10th Cir. 1973). Thus, under the holdings of these cases, the creditor’s assertion of a secured claim must fall in the absence of language connoting a grant of a security interest.
 

 The Ninth Circuit in
 
 In re Amex-Protein Development Corp.,
 
 504 F.2d 1056 (9th Cir. 1974), echoed criticism by commentators of the
 
 American Card
 
 rule. The court wrote: “There is no support in legislative history or grammatical logic for the substitution of the word ‘grant’ for the phrase ‘creates or provides for’.”
 
 Id.
 
 at 1059-60. It concluded that as long as the financing statement contains a description of the collateral signed by the debtor, the financing state
 
 *927
 
 ment may serve as the security agreement and the formal requirements of section 9-203(l)(b) are met. The tack pursued by the Ninth Circuit is supported by legal commentary on the issue.
 
 See
 
 G. Gilmore, Security Interests in Personal Property, § 11.4 at 347-48 (1965).
 

 Some courts have declined to follow the Ninth Circuit’s liberal rule allowing the financing statement alone to stand as the security agreement, but have permitted the financing statement, when read in conjunction with other documents executed by the parties, to satisfy the requirements of section 9-203(l)(b). The court in
 
 In re Numeric Corp.,
 
 485 F.2d 1328 (1st Cir. 1973) held that a financing statement coupled with a board of directors’ resolution revealing an intent to create a security interest were sufficient to act as a security agreement. The court concluded from its reading of the Code that there appears no need to insist upon a separate document entitled “security agreement” as a prerequisite for an otherwise valid security interest.
 

 A writing or writings, regardless of label, which adequately describes the collateral, carries the signature of the debtor, and establishes that in fact a security interest was agreed upon, would satisfy both the formal requirements of the statute and the policies behind it.
 

 Id.
 
 at 1331. The court went on to hold that “although a standard form financing statement by itself cannot be considered a security agreement, an adequate agreement can be found when a financing statement is considered together with other documents.”
 
 Id.
 
 at 1332.
 
 See In re Penn Housing Corp.,
 
 367 F.Supp. 661 (W.D.Pa.1973);
 
 but see Union National Bank of Pittsburgh v. Providence Washington Insurance Co.,
 
 21 U.C.C. Rep.Serv. 1463 (W.D.Pa.1977).
 

 More recently, the Supreme Court of Maine in
 
 Casco Bank & Trust Co. v. Cloutier,
 
 398 A.2d 1224, 1231-32 (Me.1979) considered the question of whether composite documents were sufficient to create a security interest within the terms of the Code. Writing for the court, Justice Wernick allowed a financing statement to be joined with a promissory note for purposes of determining whether the note contained an adequate description of the collateral to create a security agreement. The court indicated that the evidentiary and Statute of Frauds policies behind section 9-203(l)(b) were satisfied by reading the note and financing statement together as the security agreement.
 

 In the case before us, the district court went a step further and held that the promissory note executed by Bollinger in favor of Z&J, standing alone, was sufficient to act as the security agreement between the parties. In so doing, the court implicitly rejected the
 
 American Card
 
 rule requiring grant language before a security agreement arises under section 9-203(l)(b). The parties have not referred to any Pennsylvania state cases on the question and our independent research has failed to uncover any. But although we agree that no formal grant of a security interest need exist before a security agreement arises, we do not think that the promissory note standing alone would be sufficient under Pennsylvania law to act as the security agreement. We believe, however, that the promissory note, read in conjunction with the financing statement duly filed and supported, as it is here, by correspondence during the course of the transaction between the parties, would be sufficient under Pennsylvania law to establish a valid security agreement.
 
 [3]
 

 
 *928
 
 III.
 

 We think Pennsylvania courts would accept the logic behind the First and Ninth Circuit rule and reject the
 
 American Card
 
 rule imposing the requirement of a formal grant of a security interest before a security agreement may exist. When the parties have neglected to sign a separate security agreement, it would appear that the better and more practical view is to look at the transaction as a whole in order to determine if there is a writing, or writings, signed by the debtor describing the collateral which demonstrates an intent to create a security interest in the collateral.
 
 [4]
 
 In connection with Z&J’s loan of $150,000 to Bollinger, the relevant writings to be considered are: (1) the promissory note; (2) the financing statement; (3) a group of letters constituting the course of dealing between the parties. The district court focused solely on the promissory note finding it sufficient to constitute the security agreement. Reference, however, to the language in the note reveals that the note standing alone cannot serve as the security agreement. The note recites that along with the assigned 1972 security agreement between Bollinger and ICC, the Z&J loan is “further secured by security interests in a certain Security Agreement
 
 to be delivered
 
 by Bollinger to Z&J with this Promissory Note, .... (Emphasis added.) The bankruptcy judge correctly reasoned that “[t]he intention to create a separate security agreement negates any inference that the debtor intended that the promissory note constitute the security agreement.” At best, the note is some evidence that a security agreement was contemplated by the parties, but by its own terms, plainly indicates that it is not the security agreement.
 

 Looking beyond the promissory note, Z&J did file a financing statement signed by Bollinger containing a detailed list of all the collateral intended to secure the $150,000 loan to Bollinger. The financing statement alone meets the basic section 9-203(l)(b) requirements of a writing, signed by the debtor, describing the collateral. However, the financing statement provides only an inferential basis for concluding that the parties intended a security agreement. There would be little reason to file such a detailed financing statement unless the parties intended to create a security interest.
 
 [5]
 
 The intention of the parties to create a security interest may be gleaned from the expression of future intent to create one in the promissory note and the intention of the parties as expressed in letters constituting their course of dealing.
 

 The promissory note was executed by Bollinger in favor of Z&J in December 1974. Prior to the consummation of the loan, Z&J sent a letter to Bollinger on May 30, 1974, indicating that the loan would be made “provided” Bollinger secured the loan by a mortgage on its machinery and equipment. Bollinger sent a letter to Z&J on September 19, 1974, indicating:
 

 With your [Z&J’s] stated desire to obtain security for material and funds advanced, it would appear that the use of the note would answer both our problems. Since the draft forwarded to you offers full collateralization for the funds to be advanced under it and bears normal interest during its term, it should offer you maximum security.
 

 Subsequent to the execution of the promissory note, Bollinger sent to Z&J a list of the
 
 *929
 
 equipment and machinery intended as collateral under the security agreement which was to be, but never was, delivered to Z&J. In November 1975, the parties exchanged letters clarifying whether Bollinger could substitute or replace equipment in the ordinary course of business without Z&J’s consent. Such a clarification would not have been necessary had a security interest not been intended by the parties. Finally, a letter of November 18,1975, from Bollinger to Z&J indicated that “any attempted impairment of the collateral would constitute an event of default.”
 

 From the course of dealing between Z&J and Bollinger, we conclude there is sufficient evidence that the parties intended a security agreement to be created separate from the assigned ICC agreement with Bol-linger. All the evidence points towards the intended creation of such an agreement and since the financing statement contains a detailed list of the collateral, signed by Bol-linger, we hold that a valid Article Nine security agreement existed under Pennsylvania law between the parties which secured Z&J in the full amount of the loan to Bollinger.
 

 IV.
 

 The minimal formal requirements of section 9-203(l)(b) were met by the financing statement and the promissory note, and the course of dealing between the parties indicated the intent to create a security interest. The judgment of the district court recognizing Z&J’s secured claim in the amount of $150,000 will be affirmed.
 

 Each side to bear their own costs.
 

 [1]
 

 . State law governs the secured interests asserted by the parties in bankruptcy.
 
 See 4
 
 Collier on Bankruptcy, ¶ 544.02 at 544-8 (15th ed. 1979); 1A Pt. 2 Moore’s Federal Practice H 0.322[1] at 3293-97 (2d ed. 1979).
 
 See also In re Medical Services, Inc.,
 
 460 F.2d 524, 526 (3d Cir. 1972). The loan transaction with Zimmerman & Jansen took place in Pennsylvania and the financing statement was also filed in Pennsylvania. The parties do not dispute that Pennsylvania law governed the debtor-creditor relationship. For purposes of simplicity, citation will be made only to the U.C.C. Article Nine section. The corresponding Pennsylvania sections may be found in 12A P.S. §§ 9-101 9-507 (Purdon 1970).
 

 [2]
 

 . Jurisdiction in this court is based on an appeal from a final order of the district court, 28 U.S.C. § 1291 (1976).
 

 [3]
 

 . The district court held alternatively that the assignment of the 1972 security agreement between Bollinger and ICC to Z&J was sufficient to give Z&J a secured claim in the amount of $150,000. The 1972 security agreement contained a “future advances” clause, allowing ICC to use the collateral for its original loan to Bollinger as security for any future sums advanced by it to Bollinger, as permitted by section 9-204(5). Z&J argued that its loan to Bollinger qualified as a future advance under the assigned security agreement, thereby giving it a security interest in the amount of $150,000. Although we have serious reservations whether the “future advances” clause was broad enough to encompass a loan made by a third party, we need not consider this alternative theory offered by the district court because we are convinced that the documents executed be
 
 *928
 
 tween Bollinger and Z&J were sufficient to secure Z&J.
 

 [4]
 

 . We do not intend in any way to encourage the commercial community to dispense with signing security agreements as a normal part of establishing a secured transaction. Lawsuits over the existence of a security agreement may be avoided by executing a separate security agreement conforming to the minimal requirements of section 9-203(l)(b). Our decision today only predicts, after our examination of the relevant case law, that Pennsylvania courts would adopt a pragmatic view of the issue raised here and recognize the intention of the parties expressed in the composite documents and not exalt form over substance.
 

 [5]
 

 . Z&J would not have had to file a financing statement for the $65,000 covered by the 1972 security agreement between ICC and Bollinger, inasmuch as the assignee of a security interest is protected by the assignor’s filing. Section 9-302(2).