**In the Matter of H. L. CLEMENT CO., Debtor.**

**EQUIBANK, Plaintiff,**

v.

**H. L. CLEMENT CO., Defendant.**

**Bankruptcy No. 80–492.**
**Adv. No. 80–309.**

United States Bankruptcy Court,
W. D. Pennsylvania.

March 20, 1981.

Kenneth P. Simon, Pittsburgh, Pa., for plaintiff.

David W. Lampl, Pittsburgh, Pa., for defendant.

## MEMORANDUM OPINION

GERALD K. GIBSON, Bankruptcy Judge.

The matter presently before the Court is the complaint of Equibank for relief from the automatic stay pursuant to section 362 of the Bankruptcy Code, 11 U.S.C. § 362. Equibank alleges that it is the assignee of a valid security interest in certain roofing equipment (plaintiff's complaint, exhibit A) which was granted to Western Reserve Leasing Company (hereinafter called "Western Reserve") by H. L. Clement Co. (hereinafter called "Clement"), the debtor-in-possession, to secure an indebtedness in the amount of $21,475.00. The plaintiff further alleges that the $19,775.00 which is presently due and owing, exceeds the value of the collateral and that since Clement is in default under the terms of the "loan/lease security agreement," Equibank is entitled to possession of the equipment.

Clement contends that Equibank does not have a valid security interest in the equipment because the loan transaction, and supporting documents, do not comply with the requirements that were recently outlined by the Third Circuit in *In the Matter of Bollinger Corp.*, 614 F.2d 924 (3d Cir. 1980). Clement argues that Equibank fails to meet the *Bollinger* test since the plaintiff's supporting documents do not evidence an intention to grant a security interest. The

Court agrees with Clement and, for the reasons set forth hereinafter, dismisses the plaintiff's complaint.

### 1. *Findings of Fact*

On April 9, 1980, the defendant Clement filed a petition for reorganization pursuant to Chapter 11 of the Bankruptcy Code.

At a meeting held on June 25, 1979, the directors of Clement passed a corporate resolution authorizing Timothy J. Clement, the treasurer of Clement, "to negotiate, procure and execute such Lease Agreements, with Western Reserve Leasing Corporation [that] are in his opinion necessary or advisable to effectuate the most favorable interests of the Corporation ...." Corporate Resolution of H. L. Clement Co. dated June 27, 1979 (plaintiff's exhibit D). On June 27, 1979, the treasurer of Clement entered into a loan agreement with Western Reserve, wherein Western Reserve agreed to loan Clement approximately $14,000. Pursuant to their agreement, Western Reserve agreed to pay $10,000 on behalf of Clement to a supplier of roofing equipment and $4,000 directly to Clement in reimbursement for monies previously spent by Clement in the purchase of roofing equipment. Clement agreed to obtain insurance on the roofing equipment and to name Western Reserve and Equibank as loss payees. The parties signed a promissory note (plaintiff's exhibit 3), dated June 27, 1979, which evidenced their intent to enter into a loan transaction. The parties did not intend to enter into a lease agreement and no lease was executed (transcript at pages 19 and 24).

The promissory note consists of five paragraphs providing for the following: (1) monthly payments by Clement shall begin on June 30, 1979 and the total interest charge on the monies advanced to Clement and to its supplier is $6,900; (2) upon the happening of certain conditions precedent, the note shall at the option of the holder, become immediately due and payable; (3) the confession of judgment by Clement upon its failure to comply with the terms of the note; (4) upon the default of Clement,

Western Reserve shall have the right to charge any unpaid amount of Clement against any of Clement's deposit accounts maintained at Western Reserve; and (5) Clement shall make 36 payments of $425.00 followed by 24 payments of $275.00. The promissory note does not contain language which evidences an intent of Clement to grant Western Reserve a security interest. On July 9, 1979, Western Reserve assigned all of its rights, title and interest in the promissory note to Equibank.

Subsequent to their entering into the loan agreement, Clement and Western Reserve signed, but did not date, a document entitled "Acknowledgment of Receipt of Chattels" (plaintiff's exhibit C). This document, which is a form document that would be usually used if Clement were a lessee, was altered to indicate that Clement was signing in a capacity other than a lessee of the equipment. The form provided:

> Lessee acknowledges that the equipment described below has been delivered to and received by it, is as represented and is acceptable and satisfactory to it, and that the same has been accepted as units leased by it, under said lease, and hereby authorizes Lessor to pay the supplier's invoice.

The document contained no language granting a security interest by Clement to Western Reserve.

On July 9, 1979, Western Reserve executed a corporate security agreement (plaintiff's exhibit E), wherein Western Reserve granted Equibank a security interest in the roofing equipment that is the subject of this adversary proceeding.

Clement and Western Reserve filed a financing statement with the Prothonotary of Allegheny County and the Security of the Commonwealth of Pennsylvania which contained a detailed description of the collateral at issue (plaintiff's exhibits F & G). There is no evidence as to the exact filing date of the financing statements. The financing statements stated in block 5: "Assignment of Lease between H. L. Clement Company and Western Reserve Leasing Corp. Lease # 646 dated June 27, 1979."

Daniel P. Vall, treasurer of Western Reserve, testified that although some of the supporting documents relating to the agreement between Clement and Western Reserve specifically refer to Lease Number 646, the transaction was a loan and not a lease (transcript at pages 19 and 24).

*Discussion*

In accordance with the above findings of fact, the transaction between Clement and Western Reserve was a loan that created the typical debtor-creditor relationship between the parties. Accordingly, two requirements must be met under Article 9 of the U.C.C., 13 Pa.C.S.A. §§ 9101–9507 (1980), in order to create a perfected security interest in a debtor's collateral: (1) a "security agreement," and (2) a "financing statement." The "security agreement" serves an evidentiary function in order to prevent disputes as to what properties are covered, and also obviates any statute of frauds problem so that claims are not based on wholly oral representations, Section 9–203, Comments 3 and 5. The "financing statement" merely gives the public notice that a security interest may exist in the listed collateral. *Matter of Bollinger Corp.*, 614 F.2d at 924.

Section 9–203(1)(b) further requires that in order to create a security agreement, there must be (1) a writing (2) signed by the debtor and (3) describing the collateral. *Id.*, at 926. A standard form financing statement alone does not constitute a "security agreement" pursuant to section 9–203(1)(b). *In re Penn Housing Corp.*, 367 F.Supp. 661 (W.D. Pa. 1973). In *Bollinger*, 614 F.2d at 928, the Third Circuit concluded that a formal security agreement is not essential for the creation of a security agreement since other documents, which are considered together with the financing statement, may prove the debtor's intent to create a security interest. The requirements of section 9–203(1)(b) are thereby satisfied in substance, although no specific document is labeled "security agreement." In *Bollinger* the court reasoned:

When the parties have neglected to sign a separate security agreement, it would appear that the better and more practical view is to look at the transaction as a whole in order to determine if there is a writing, or writings, signed by the debtor describing the collateral which demonstrates an intent to create a security interest in the collateral.

*Id.*

Significantly, the specific documents upon which the Third Circuit relied in *Bollinger* were a promissory note, a financing statement and a group of letters constituting the course of dealing between the parties. The promissory note, which was executed by Bollinger in favor of Zimmerman & Jansen, Inc. (Z & J), contained specific language that the parties intended to create a separate security agreement: "The note recites that along with the assigned 1972 security agreement between Bollinger and ICC, the Z & J loan is 'further secured by security interests in a certain Security Agreement to be delivered by Bollinger to Z & J with this Promissory Note....'" *Id.*, citing the Promissory Note between Bollinger and Z & J. The financing statement in *Bollinger* contained a detailed list of the collateral and was signed by the debtor. Moreover, a letter dated September 19, 1974 from the debtor to the creditor stated:

With your [Z & J's] stated desire to obtain security for material and funds advanced, it would appear that the use of the note would answer both our problems. Since the draft forwarded to you offers full collateralization for the funds to be advanced under it and bears normal interest during its term, it should offer you maximum security.

In the case at bar, none of the supporting documents, other than the financing statement, submitted by the plaintiff contain any language whatsoever indicating that the debtor intended to create a security agreement. Other courts have also held that where there is no one document entitled "security agreement," the supporting documents must contain language revealing that a security interest was in fact agreed

upon by the parties. *In re Amex-Protein Development Corp.*, 504 F.2d 1056 (9th Cir. 1974); *In re Carmichael Enterprises, Inc.*, 334 F.Supp. 94 (N.D. Ga. 1971), aff'd per curiam 460 F.2d 1405 (5th Cir. 1972).

The First Circuit in *In re Numeric Corp.*, 485 F.2d 1328 (1st Cir. 1973), held that a financing statement considered together with a corporate resolution, constituted a security agreement within the meaning of 9–203(1)(b). In *Numeric*, the corporate resolution specifically provided:

VOTED: That the Clerk of the corporation prepare standard form, Uniform Commercial Code financing statements on behalf of the corporation as a debtor, to Russell Blank, as the secured party, in such manner and form as to cover Russell Blank's security interest in the property of this corporation as set forth in a Bill of Sale dated March 2, 1962, from said Russell Blank to the corporation, and as hereafter acquired, and as evidence of his security interest in the same. That the treasurer, Robert Dean, be and hereby is authorized to execute and deliver the same to said Russell Blank on behalf of the corporation.

In the instant case, the corporate resolution of Clement merely authorizes Timothy Clement "to negotiate, procure and execute such Lease Agreements, with Western Reserve Leasing Corporation [that] are in his opinion necessary or advisable to effectuate the most favorable interests of the Corporation . . . ."

Writing for the court in *In re Penn Housing Corporation*, 367 F.Supp. at 665, Judge Weber held that a series of promissory notes, a financing statement, a letter from the debtor to the creditor, and the parties' course of dealing, viewed as a whole, constituted a security agreement. One of the promissory notes stated: The security interest(s) set forth above secures all other obligations of any of the undersigned to bank which now exist or may rise in the future and covers after acquired property of the undersigned." Furthermore, the letter from the debtor to the creditor included the following statements: "We owe $326,500 in demand notes secured by a financing statement pledging the accounts receivable and inventory."

The Uniform Commercial Code provides a simple method of creating a perfected security interest. The Third Circuit in *Bollinger* liberally interprets these requirements in its holding that the debtor need not sign a specific document entitled "security agreement." In this case, however, Equibank provided no supporting document, along with the financing statement, evidencing an intent to create a security interest by the debtor to Western Reserve. Western Reserve therefore did not have a valid security interest in the equipment of Clement, 13 Pa.C.S.A. § 9203, and accordingly, the granting of a security interest by Western Reserve to Equibank in the equipment of Clement is a nullity. For the foregoing reasons, the complaint of Equibank must be denied.

An appropriate order will be entered.