**In the Matter of Mitchell L. SANDLER, t/a Sandler Restaurant & Catering Service; Terrace Pancake House; Whistle Stop; Flap-Jacks Family Restaurant; Flap-Jacks Catering Services, Debtor.**

**Bankruptcy No. 80–1564.**

United States Bankruptcy Court,
W. D. Pennsylvania.

June 2, 1982.

Larry Housholder, Washington, Pa., for the Thomases.

Mark L. Glosser, Pittsburgh, Pa., for trustee.

## MEMORANDUM OPINION

GERALD K. GIBSON, Bankruptcy Judge.

The matter presently before the Court is the estate of Mitchell L. Sandler, t/a Sandler Restaurant and Catering Service; Terrace Pancake House; Whistle Stop; Flap-Jacks Family Restaurant; and Flap-Jacks Catering Services; wherein creditors George Thomas and JoAnn Thomas (hereinafter "Creditors") have filed a creditors' application for turnover of proceeds from a public sale.

Creditors assert a security interest in restaurant equipment and merchandise sold at a public sale on debtor's premises by the trustee in bankruptcy. Although the parties did not sign a separate security agreement, creditors' assert their security interest on the basis of a financing statement and agreement of sale which allegedly meet requirements as set forth by the Third Circuit in *In re Bollinger*, 614 F.2d 924 (3d Cir. 1980).

Trustee argues that the documents in the case at bar reveal no intent of the parties to create a security interest. Therefore, the minimum requirements of *Bollinger, supra.* for the creation of a valid security interest have not been met.

The Court agrees. For the reasons set forth below, the Court concludes that the creditors herein do not have a valid security interest in the equipment and merchandise sold by the trustee at a public sale. Accordingly, the creditors' application for turnover of proceeds from the sale will be dismissed.

The facts are briefly as follows. George and JoAnn Thomas were the owners of a retail restaurant business known as the Plaza Restaurant, and located at 192 West Chestnut Street, Washington County, Pennsylvania. Prior to the debtor's filing of a petition in bankruptcy, the debtor, and George and JoAnn Thomas, creditors, signed an agreement of sale dated March 31, 1977. In the sales agreement, the Thomases agreed to sell, and the debtor agreed to purchase the following: "the restaurant business, including merchandise and stock in trade, furniture, trade fixtures, machinery, equipment, notes and accounts receivable, insurance policies which may be transferable, and all other assets of the seller's business, tangible and intangible." (Exhibit A: Agreement of Sale, § 1). The agreed upon price was $43,000.00, payable as follows: $1,000 prior to the signing of the agreement; $12,000 at the date of closing; and the balance of $30,000 payable in equal monthly installments of $594.04.

Attached to the agreement of sale was a detailed list labelled "Plaza Restaurant Inventory"; dated March 28, 1977; and initialed by all parties herein. In addition, standard U.C.C. financing statements were filed in the Washington County Office of the Prothonotary and with the Secretary of the Commonwealth of Pennsylvania. Mitchell Sandler was listed as debtor; George and JoAnn Thomas as creditors; and the subject property described as "Plaza Restaurant fixtures, furniture, and inventory". The "proceeds" box was not marked. (Exhibits D and E).

In the application for turnover of proceeds, creditors allege that the "Flap Jacks Family Restaurant" is a continuation of the business enterprise formerly known as the "Plaza Restaurant". It is the assets located thereon and later sold by the trustee that are allegedly subject to creditors' security interest. Creditors further assert a security interest in additional items sold by the trustee at another of the debtor's business locations known as "Terrace Pancake House". According to creditors, these items (more particularly described as a cash register; refrigerated pie case; and coffee maker) were originally located on the "Flap-Jack" premises, but were transferred to the "Terrace Pancake House" some time prior to the sale.

The narrow issue before the Court is whether or not the financing statement and agreement of sale in the case at bar comply with the minimum requirements for the creation of a security interest as set forth by the Third Circuit in *In re Bollinger, supra.*

Under Article 9 of the Uniform Commercial Code, 13 Pa.C.S.A. 9101–9507 (1980); two requirements must be met for the creation of a perfected security interest in debtor's collateral: (1) a security agreement and (2) a financing statement.

In the case at bar, the Court is presented with two documents: (1) a standard U.C.C. financing statement and (2) an agreement of sale. A standard form financing statement alone does not constitute a security agreement pursuant to § 9–203(1)(b) of the Uniform Commercial Code. *In re Penn Housing,* 367 F.Supp. 661 (W.D.Pa.1973). Therefore, the Court must look to the agreement of sale for evidence of the parties' intent to create a security interest.

The Third Circuit has held that in the absence of a formal security agreement, a creditor can assert a secured claim against a debtor if the various documents presented evince an intent to create a security agreement. *In re Bollinger, supra.*

As stated in the opinion:

Where parties have neglected to sign a separate security agreement, it would appear that the better and more practical view is to look at the transaction as a whole in order to determine if there was a writing or writings signed by the debtor, describing the collateral, which demonstrate an intent to create a security interest in the collateral. (*In re Bollinger,* p. 928.)

A careful reading of the agreement of sale in the case at bar reveals no explicit language purporting to create a security interest. Neither the terms "security", "security interest", or "collateral" nor the like appear therein. Nor does the agreement indirectly infer an intent by the parties to create a security interest.

Creditors argue the existence of an enforceable security interest by reason of a clause in the agreement of sale which provides as follows:

Upon such delivery to Buyer and receipt by Seller of the balance due on the purchase price, the sale by Seller to Buyer shall be completed and effective, and Buyer shall have possession and ownership of said business and assets. (Exhibit A: Agreement of Sale, § 3).

The Court disagrees that such language demonstrates an intent to create a security interest in the collateral.

Therefore, the Court is compelled to conclude that creditors have failed to comply with the liberal requirements for the creation of a security interest as outlined by the Third Circuit in *In re Bollinger, supra.* As this Court has held on a prior occasion, since the supporting documents presented in the case at bar do not evince an intent to create a security interest, the creditors alleged security interest in inventory later sold by the trustee in bankruptcy is a nullity. See *In Matter of H. L. Clement,* 12 B.R. 165 (Bkrtcy.W.D.Pa.1981). Accordingly, the creditors' application for turnover of proceeds from a public sale will be dismissed.