**MARY E. GUSTAFSON, Plaintiff**

v.

**BANK OF AMERICA, Defendant**

Civil No. 643/1982

Territorial Court of the Virgin Islands

Div. of St. Croix at Christiansted

August 2, 1982

EDWARD HASKINS JACOBS, ESQ., Christiansted, St. Croix, V.I., *for plaintiff*

ALFRED & BRADY, ESQS., Christiansted, St. Croix, V.I., *for defendant*

FINCH, *Judge*

## MEMORANDUM OPINION

Plaintiff, Mary E. Gustafson, has requested this Court to enter a temporary restraining order against the Bank of America in order to prevent the sale of a 46-foot trimaran known as "Barco Mañana", presently in the bank's possession. Plaintiff alleges that she holds a perfected security interest in the boat pursuant to a promissory note executed December 9, 1980, and a filed financing statement. For the reasons set out below the temporary restraining order will be denied.

## FACTS

In December, 1980 Gustafson agreed to lend $6,000.00 to her friend Anita Parascondola, the president of Barco Mañana, Inc., a sailing concern whose business it was to take passengers on charter cruises. As collateral for the loan Parascondola pledged the boat known as "Barco Mañana". A promissory note evincing this debt was signed and the financing statement filed as required. It is conceded by both parties that no document known as a security agreement was ever filed. The financing statement was signed by the debtor and contains a description of the collateral.

The bank subsequently seized the boat for failure to pay under terms of an agreement the bank had with the owner of the vessel.

In the complaint plaintiff has listed various objections to the manner in which the bank is conducting the sale and alleges that the procedures are commercially unreasonable as that term is defined by the Uniform Commercial Code (hereinafter the "U.C.C.") 11A V.I.C. §§ 1—101-9—507 (Equity 1965 & Supp. 1982). The Court need not reach those questions regarding the propriety of the bank's conduct of the sale, since a threshold determination of standing is dispositive.

The sole question for consideration is whether Mary Gustafson is a secured party under the U.C.C. More specifically the inquiry may

be stated thus: will a financing statement and a promissory note, coupled with oral representations that a security interest in the collateral exists, satisfy the requirements of 11A V.I.C. § 9—203(1)(b). A reading of the statute, the interpretive commentary and case law dictate that the answer must be in the negative.

## DISCUSSION

██ ██ In order for a security interest to attach to the collateral the requirements of 11A V.I.C. § 9—203(1)(b) must be met.[1] A security agreement is defined as "an agreement which creates or provides for a security interest." 11A V.I.C. § 9—105(1). The security agreement must be in writing, signed by the debtor and contain a description of the collateral. It is evident, therefore, that there must exist some written document in the nature of a security agreement containing the statutory prerequisites. In re Copeland, 391 F.Supp. 134, 144–45 (D. Del. 1975), aff'd in part, vacated in part on other grounds, 531 F.2d 1195 (3d Cir. 1976); see 79 C.J.S. Supp., Secured Transactions § 20 at 22 (1974 & Supp. 1982). Some courts have strictly interpreted this to mean the financing statement does not satisfy the requirements of a security agreement even where it is signed and contains a description of the collateral. Transport Equipment Co. v. Guaranty State Bank, 578 F.2d 377, 380 (10th Cir. 1975). That is not the law, however, in this Circuit. In Matter of Bollinger, 614 F.2d 924 (3d Cir. 1980), the Third Circuit found that:

> the promissory note, read in conjunction with the financing statement duly filed and supported, as it is here, by correspondence during the course of the transaction between the parties, would be sufficient under Pennsylvania law to establish a valid security agreement.

---

[1] Title 11A V.I.C. § 9—203 provides in pertinent part:

(1) Subject to the provisions of section 4—208 on the security interest of a collecting bank and section 9—113 on a security interest arising under the article on Sales, a security interest is not enforceable against the debtor or third parties unless

    (a) the collateral is in the possession of the secured party; or

    (b) the debtor has signed a security agreement which contains a description of the collateral and in addition, when the security interest covers crops or oil, gas or minerals to be extracted or timber to be cut, a description of the land concerned. In describing collateral, the word "proceeds" is sufficient without further description to cover proceeds of any character.

In this case two of the elements present in Bollinger exist here, i.e., the financing statement and the promissory note.[2] There is no evidence of written correspondence between the parties regarding their intentions. Plaintiff argues that the oral representations are sufficient to fill the gap left void by the parties' failure, in writing, to manifest their intention that the loan be secured by the boat.[3]

█ "The requirement of the Code for creating a security interest is simple—an intention to create a security is all that need be shown—a dozen words or less are sufficient, but the security interest must contain language that meets this simple requirement." U.C.C. COMMENTARY AND LAW DIGEST ¶9—203[A][6] at 9-97 (1978 & Supp. 1982), quoting from, 3 U.C.C. LAW LETTER 12 (Feb. 1970). The writing requirement of § 9—203 has been described as being "in the nature of a statute of frauds." 11A V.I.C. § 9—203 comment 5 (Equity 1965); see In re Motrak Corp., 5 U.C.C.R.S. 659, 664 (D. Minn. 1967) ("section creates new statute of frauds"). Inasmuch, "parol evidence is not admissible to establish the statutory requirements." Matter of Delta Moulded Products, Inc., 416 F.Supp. 938, 942–43 (N.D. Ala. 1976). On this point the courts and commentators are in agreement. An oral security interest is not enforceable as it violates the clear intention of the statute.[4] Tate v. Gallagher, 355 A.2d 417, 19 U.C.C.R.S. 281, 282–83 (N.H. 1976); see 4 R. ANDERSON, UNIFORM COMMERCIAL CODE § 9—203:11 (2d ed. 1971 & Supp. 1980); cf. Crete State Bank v. Lauhoff Grain Co., 239 N.W.2d 789, 791 (Neb. 1976).[5]

---

[2] Indeed, there is some question with regard to financing statement since that document appears to have matured on August 10, 1981.

[3] The promissory note contains no language which would so indicate. The financing statement contains only the signatures and the description of the collateral.

[4] The writing requirement is waived where the collateral is in the possession of the secured party. 11A V.I.C. § 9—203(1)(a). As it is pointed out in the official comments, the purpose of the subsection is evidentiary. 11A V.I.C. § 9—203 comment 3 (Equity 1965). Although provision has been made to dispense with the writing requirement when the collateral is in the secured party's possession, the Code is noticeably silent regarding a waiver of the rule when the collateral is not so situated. This preterition is certainly indicative of the intention of the authors in this area. Given the exhaustive treatment afforded the Uniform Commercial Code from inception to adoption, it is unlikely that an omission of this nature was inadvertent.

[5] Plaintiff has vigorously contended that the Court must read § 9—203 in conjunction with 11A V.I.C. § 1—201(3) which defines "agreement" as "the bargain of the parties in fact as found in their language or by implication from other circumstances including course of dealing or usage of trade or course of performance as provided in this Act . . . ." At first blush this definition would appear to permit

■ The Court finds therefore that the written security agreement must contain, in addition to the description of the collateral and the debtor's signature, a manifestation of intention to create a security interest in the collateral. Since 11A V.I.C. § 9—203 is in the nature of a statute of frauds, oral testimony will not be admitted in order to change, alter or modify the written expressions of the parties. To hold otherwise would damage severely the plain meaning the drafters obviously intended the statute to have.

■ There being no written expression of the parties' intention to create as security interest in the "Barco Mañana," and none could be proven except by parol evidence, the Court determines that the security interest of plaintiff did not attach. Gustafson lacks standing to challenge the manner in which defendant is conducting the sale. The temporary restraining order is denied, and judgment will enter accordingly against plaintiff and in favor of defendant.

the introduction of oral testimony to show the terms of the security agreement. Counsel is directed to the last sentence of the definition which reads "[w]hether an agreement has legal consequences is determined by the *provisions of this Act,* if applicable; otherwise *by the law of contracts."* (Emphasis added.) Section 1—201(3) should not be read as an alternative to the requirements of § 9—203. To view it in that context would be an invitation for parties to attempt to do by indirection that which they are prohibited from doing directly.