### In re CPM ENERGY SYSTEMS CORPORATION.

**Frederic A. LANG**

**v.**

**CPM ENERGY SYSTEMS CORPORATION.**

Bankruptcy No. 89–103.
Motion No. 89–87.

United States Bankruptcy Court,
D. Delaware.

May 3, 1990.

---

David J. Ferry, Jr., Wilmington, Del., for Frederic A. Lang.

Thomas D. Runnels, Newark, Del., for debtor.

HELEN S. BALICK, Bankruptcy Judge.

This is the court's Opinion on the question of whether Frederic A. Lang's claim has secured status in the CPM Energy Systems Corporation's Chapter 11 case.

Lang's claim arises out of a $200,000 loan made to CPM in October 1986 that was refinanced in February 1987. The original loan is evidenced by two $100,000 promissory notes, two stock purchase agreements authorized by corporate resolution and a financing statement filed December 18, 1986, with the Secretary of the Commonwealth of Pennsylvania. On February 19, CPM again executed two promissory notes each in the amount of $100,000 and two stock purchase agreements, authorized by corporate resolution dated February 18. A financing statement was subsequently filed with the Prothonotary of Northampton County on May 26, 1987. Both financing statements had attached a detailed list of machinery and equipment located at 840 Line Street, Easton, Pennsylvania. CPM did not sign any security agreement in connection with either loan transaction. Lang forwarded what he called security agreements to CPM for signature the end of March 1988 and followed with a letter dated April 7 requesting their return. These agreements were actually financing statements.

Lang also obtained a judgment against CPM on September 19, 1988, in the amount of $210,000 plus interest and costs upon which a writ of execution issued on November 22. The Sheriff's list of CPM's machinery and equipment levied upon on December 19, 1988, is identical to that listed in the U.C.C. filings.

Under the Pennsylvania version of the U.C.C. in order to create a security interest there must be a security agreement filed by the debtor containing a description of the collateral or types of collateral. 13 Pa.C.S.A. § 9203(a)(1). The statute provides that a security agreement may serve as a financing statement if it is signed by the debtor but it is silent as to the converse. 13 Pa.C.S.A. § 9402. However, the law of this Circuit is that no formal security agreement is required if there is a writing or writings signed by the debtor describing the collateral which demonstrates an intent to create a security interest in the collateral. *In the Matter of Bollinger Corp.*, 614 F.2d 924 (3rd Cir. 1980).

Here, related documents satisfy the *Bollinger* test. The stock purchase agreements signed in conjunction with the promissory notes in both the 1986 and 1987 transactions specifically state that:

> (d) The loan shall be secured by security agreements executed in connection with certain personal property owned by CPMES and now located at the CPMES facility at 840 Line Street, Easton, Pennsylvania. The Security Agreement shall take the form as attached at Exhibit "B" and shall constitute a Security Agreement under the Uniform Commercial Code, as enacted by the Commonwealth of Pennsylvania and State of Delaware.

The financing statements, signed by the debtor, list in detail the machinery and equipment intended as collateral. The failure to execute formal security agreements is explained by the parties mistakenly calling a financing statement a security agreement. Thus, Lang has a valid security interest in the property described, listed and attached to the financing statements.

In Pennsylvania, the lien of any judgment or other order of the Court of Common Pleas for the payment of money is a lien upon real property effective upon its entry in the office of the Clerk of Court of the County where the real property is located. 42 Pa.C.S.A. § 4303(a). The delivery of a writ of execution to the Sheriff creates a lien against personal property. *DeAngelis v. Commonwealth Land Title Ins. Co.*, 467 Pa. 410, 358 A.2d 53 (1976). Consequently, the delivery of the writ of execution to the Sheriff on November 22, 1988, more than 90 days before the bankruptcy filing, resulted in a lien against the same machinery and equipment described in the financing statements with the exception of four Accurate trailers.

Lang has standing to proceed with his motion for relief as a secured creditor. This Opinion however does not deal with priority of the liens which may be asserted against the property in issue.

IT IS SO ORDERED.