**In re William Leonard HANCE, Debtor.**

**Bankruptcy No. 5–91–00245.**

United States Bankruptcy Court,
M.D. Pennsylvania.

March 18, 1993.

Peter Hoegen, Jr., Wilkes–Barre, PA, for debtor.

Charles Phillips, Wyomissing, PA, for Sears.

### *OPINION AND ORDER*

JOHN J. THOMAS, Bankruptcy Judge.

Before the Court is a Motion entitled "Motion for Determination of Secured Status". This Motion, however, requests the Court to require Sears, Roebuck & Co., (hereinafter "Sears"), "to prove any claim which it may assert against the property of Debtor, all of which has been claimed as exempt and, upon failure thereof, to deny such claim under the provision of Section 502(b)(1); and for such other and further relief as is just". Consequently, this Court is treating the instant Motion as an objection to a Proof of Claim.

Before proceeding further, we note that, in addition to the instant Motion, a companion case was filed by the Debtor against Montgomery Ward. That Motion was responded to by Montgomery Ward with a Motion for Abstention which this Court granted by Order dated October 13, 1992. The Court also found that the subject matter of that determination was a non-core related action. The primary differentiating fact between the Montgomery Ward case and the instant Motion is that a Proof of Claim was filed by Sears and this Court is treating the instant Motion as an objection to the Proof of Claim under Section 502 of the Bankruptcy Code. The instant matter is a core proceeding and subject to this Court's jurisdiction.

The facts can be stated simply as follows.

This case was reopened by Order of this Court for the purpose of requesting a determination on the instant Motion. After the discharge was entered and just prior to the closing of this case, Sears commenced a Complaint in replevin in the Court of Common Pleas of Luzerne County, Pennsylvania, to recover certain property of the Debtor in which Sears claims to have a secured interest. The Debtor, on the other hand, alleges that there is no security agreement between the Debtor and Sears and consequently, Sears is an unsecured creditor.

Initially, the Debtor requested that Sears prove any claim that it may assert against property of the Debtor. On July 9, 1992, the parties filed a Stipulation of Facts reflecting a total balance claimed to be due and owing by the Debtor, as of the date of the filing of Seven Thousand Seven Hundred Fifty–Six and 28/100 Dollars ($7,756.28) of which Three Thousand Three Hundred Fifty–Six and 28/100 Dollars ($3,356.28) represents the principle due on certain consumer and household goods subject to the Motion. This Court adopts those facts as stipulated as the amount of the claim as of the filing of the petition.

The Debtor also requested that the Court deny the claim under the provisions of Section 502(b)(1) of the Code. That Section reads as follows:

Except as provided in subsections (e)(2), (f), (g), (h) and (i) of this section, if such objection to a claim is made, the court, after notice and a hearing, shall determine the amount of such claim as of the date of the filing of the petition, and shall allow such claim in lawful currency of the United States in such amount, except to the extent that—

(1) such claim is unenforceable against the debtor and property of the debtor, under any agreement or applicable law for a reason other than because such claim is contingent or unmatured;

Volume 3 Collier on Bankruptcy, 15th Edition at paragraph 502.02, page 502–24, provides that "if an objection is made to a claim, the Court is to determine the amount of the claim as of the date of the filing of the petition commencing the case, and will allow that claim in such amount except to the extent that the claim is unenforceable against the Debtor or the Debtor's property whether by agreement or applicable law for a reason other than because such claim is contingent or unmatured". A reading of the instant Motion indicates that the amount of the underlying claim is not questioned by the Debtor. The issue raised is whether or not Sears has a secured claim.

The parties direct the Court's attention to the provisions of the Uniform Commercial Code as adopted by Pennsylvania and, in particular, the requirements under Section 9–203(1)(b). The Debtor's argument, in short, is that the only writings offered by Sears to evidence a security interest are sales receipts signed by the Debtor at the time of each purchase and that these sales receipts, by themselves and without more, do not give rise to the status of a security agreement. Sears responds that, even in the absence of a signed security agreement, the sales receipts and the purchasing history between the parties evidences an intent by the parties to create a security interest in the collateral.

This Circuit is guided by the leading case of *In re Bollinger*, 614 F.2d 924 (3rd Cir. 1980). In short, the Bollinger Court was faced with a fact situation in which a creditor asserted a security interest in Debtor's collateral in the absence of a formal security agreement signed by the Debtor but, where various documents executed in connection with the loan were argued to show an intent to create a security interest.

The Court at page 926 wrote that the requirements to create a security agreement are found in Section 9–203(1)(b) of Article 9 of the U.C.C. and that "[In] order to create a security agreement, there must be; (1) a writing, (2) signed by the Debtor, (3) containing a description of the collateral or the types of collateral". Citing *Section 9–203, Comment 1*. After a short discussion as to the competing approaches to this issue, the Court wrote the following at page 928: "When the parties have neglected to sign a separate security agreement, it would appear that the better and more practical view is to look at the transaction as a whole in order to determine if there is a writing, or writings, signed by the Debtor describing the collateral which demonstrates an intent to create a security interest in the collateral".

It is with this guidance that we now analyze the transactions and the writings in question. On four separate occasions from August 29, 1990 through November 8, 1990, the Debtor signed four separate saleschecks, each one containing the following language:

"This credit purchase is subject to the terms of my SearsCharge Agreement which is incorporated herein by reference and identified by the above account number. I grant Sears a security interest or lien in this merchandise unless prohibited by law, until paid in full."

This language is immediately followed by a signature line and each of the saleschecks reflect a signature by the Debtor. The language then continues on the sales check as follows:

"If the sales is on Sears Home Improvement Plan (SHIP), use applicable contract form."

The salescheck or invoice contains Debtor's Sears account number, name, address, date of the sale, merchandise purchased and the price of each purchase.

Sears argues that the salescheck or invoice, by itself, creates a security interest in the merchandise listed thereon and evidences an intent to create a security interest. This Court agrees.

Sears has directed this Court's attention to other cases in which Sears has litigated the instant issue and in which Courts have found that the saleschecks have, by themselves, created a security interest. We note, with approval, the cases of *In re Hardage*, 99 B.R. 738 (Bktcy.N.D.Tex.1989) and *In re Bollinger, supra*.

Following the direction of the Third Circuit in the *Bollinger* case, this Court did not look at any one of the sales transactions in a vacuum, but analyzed all four transactions which took place within an approximately three month period. Repeatedly, the Debtor signed the saleschecks under language which specifically granted Sears a security interest in the merchandise.

Additionally, as the Third Circuit pointed out, "The requirements of Section 9–203(1)(b) further two basic policies. First, an evidentiary function is served by requiring a signed security agreement and, second, a written agreement also obviates any statute of frauds problems with the Debtor–Creditor relationship". *In re Bollinger, supra, at page 926*. The language contained on the salescheck is

sufficient to demonstrate the parties' intention to grant a security interest to Sears in the merchandise listed on the saleschecks which security interest would continue until the amount due and owing was paid in full.

Consequently, based on the foregoing, this Court finds that at the time of the filing of the petition, Sears had a claim against the Debtor in a total amount of Seven Thousand Seven Hundred Fifty–Six and 28/100 Dollars ($7,756.28) of which Three Thousand Three Hundred Fifty–Six and 28/100 Dollars ($3,356.28) represents the principal due on the consumer and household goods which are the subject of the instant Motion. This Court further finds that Sears is a secured creditor under the dictates of the Uniform Commercial Code as adopted by Pennsylvania found at 13 PA C.S.A. Section 9203.