### In re SODEN–MARDANE EXCAVATING, INC., Debtor.

**Bankruptcy No. 5–90–01294.**

United States Bankruptcy Court, M.D. Pennsylvania, Wilkes–Barre Division.

Sept. 26, 1994.

---

632

Paul Sotak, Scranton, PA, for debtor.

Stephen Bresset, Honesdale, PA, for Honesdale Nat. Bank.

Joseph Gorman, Trustee in Bankruptcy, Tunkhannock, PA.

John Doran, Wilkes–Barre, PA, for Trustee.

### OPINION AND ORDER

JOHN J. THOMAS, Bankruptcy Judge.

Before the court for consideration is an Objection of Joseph Gorman, Esquire, Trustee in Bankruptcy, (hereinafter "Trustee"), to claim number 18 filed on or about March 11, 1992 by Honesdale National Bank, (hereinafter "Bank"), in the approximate amount of Two Hundred Forty–Five Thousand Dollars ($245,000.00). The Trustee is currently holding the settlement proceeds of litigation initiated during the course of the administration of this estate by the Trustee against an account debtor. The Bank, through its proof of claim, claims that it has a security interest in the proceeds of that litigation. For the reasons provided herein, this court sustains the objection of the Trustee but only to the extent we find that the Bank does not have a secured interest in the proceeds of the litigation.

The parties, at the time of hearing on the instant objection, indicated to the court that it could render its decision based upon the documents filed of record in support and in opposition to the objection to the proof of claim in conjunction with the briefs filed by the respective parties. At the time of the hearing, the Bank indicated that the issue for resolution by the court was whether or not a financing statement attached to the proof of claim could act also as a security agreement thereby giving the Bank a security interest in the proceeds of the litigation. The Trustee, however, couched the issue as whether or not the financing statement could alter the terms of a security agreement which is also attached to the proof of claim.

Attached to the Bank's proof of claim, which indicates that it has an unsecured claim for approximately Twelve Thousand Dollars ($12,000.00) and a secured claim for Two Hundred Forty–Five Thousand Dollars ($245,000.00), is what was termed a current account status, which figures reflect principal of One Thousand Four Hundred Forty–Three and 74/100 Dollars ($1,443.74); interest of Twenty–One Thousand Two Hundred Forty–Five and 92/100 Dollars ($21,245.92); and costs and fees of Twenty–Five Thousand Five Hundred Seventy–One and 95/100 Dollars ($25,571.95), for a total of Forty–Eight Thousand Two Hundred Sixty–One and 61/100 Dollars ($48,261.61). The face of the proof of claim provides no indication as to the meaning of this document and the brief in opposition to the objection likewise sheds no light on the meaning of this document.

Also attached is a financing statement dated July 22, 1988 indicating that the Debtor is Soden–Mardane Excavating, Inc. and that the secured party is the Honesdale National Bank. The document appears to be signed by the vice president of the Honesdale National Bank as well as both the president and the secretary of Soden–Mardane Excavating, Inc. The financing statement indicates that it covers the following types (or items) of property: "all personal property set forth in Exhibit "A" which is attached hereto and all equipment, machinery, tools, fixtures and accounts receivable of debtor ...". Also attached to the proof of claim is a document titled Security Agreement dated July 22, 1988 by and between the Honesdale National Bank and Soden–Mardane Excavating, Inc. This document is likewise signed by officers of both the Debtor and the Bank. Without setting forth the security agreement language in its entirety, the court draws attention to the following language in the security agreement:

> "AND WHEREAS, the debtor desires to enter into this agreement for the purpose of creating a security interest in favor of the creditor in the goods and chattels described in the schedule hereto attached, marked "Schedule A" and made a part hereof;"

Attached as Exhibit "A" to the security agreement is a multi-page list which contains a description of various equipment together with an appraised value for each piece of equipment. It should be noted that the security agreement no where mentions nor references the accounts receivable of the Debtor. It is on the basis of the language contained in the financing statement and the security agreement upon which both parties based their presentation of the issue for resolution in this case.

Both parties cite the Third Circuit case of *Matter of Bollinger Corp.*, 614 F.2d 924 (3rd Cir.1980) in support of their position. In that case, the court took the position that there does not need to be a signed security agreement in order for the granting of a security interest. The court wrote the following concerning that issue:

> "We think Pennsylvania courts would accept the logic behind the First and Ninth Circuit rule and reject the *American Card* rule imposing the requirement of a formal grant of a security interest before a security agreement may exist. When the parties have neglected to sign a separate security agreement, it would appear that the better and more practical view is to look at the transaction as a whole in order to determine if there is a writing, or writings, signed by the debtor describing the collateral which demonstrates an intent to create a security interest in the collateral." *Id. at page 928.*

Based upon the *Bollinger* reasoning and other cases cited by the Bank which relied on *Bollinger*, the Bank argues that a security agreement or a financing statement "may be used interchangeably to create a security interest". See *Memorandum of Law of Honesdale National Bank, filed June 9, 1994, at page 2.* This court has previously cited the reasoning of the circuit court in *Bollinger* to find that a security agreement existed in certain property based upon a review of a transaction with documents purported to be other than a security agreement. See *In re William Hance*, Bankruptcy No. 5–91–00245, slip op., — B.R. — [1993 WL 773381] (M.D.Pa. March 18, 1993).

■ Unlike the *Bollinger* and *Hance* cases cited *supra.* and those other cases cited in the Bank's brief, the instant case does present both a financing statement and a security agreement. What is the impact of these two documents? We note that in order to create a perfected security interest in collateral, there must be first a security agreement giving the creditor an interest in the collateral and then a financing statement signed by both parties and filed of public record. See *Matter of Bollinger Corp., supra* at page 926. The formal requirements of financing statements are contained in 13 Pa.C.S.A. § 9402 and the Trustee in this case does not question whether or not the formal requirements as prescribed by that section have been met by the Bank. The comment, however, to that subsection of the Uniform Commercial Code provides, inter alia, that "this section adopts the system of 'notice filing' which

proves successful under the Uniform Trust Receipts Act.... The notice itself indicates merely that the secured party who has filed *may* have a security interest in the collateral described. *[Emphasis added.]* Further inquiry from the parties concerned will be necessary to disclose the complete state of affairs. Section 9–208 provides a statutory procedure under which the secured party, at the debtor's request, may be required to make disclosure...."

What would a creditor learn from further inquiry after a review of the financing statement in question? The parties submitted to this court for review an extremely detailed security agreement which lists a lengthy compilation of specific descriptions of equipment with appraised values attached as Schedule A to the security agreement. Recall that this security agreement did not mention accounts receivable and, in fact, in several places referenced that there was a security interest in goods and chattels described on Schedule A of the security agreement.

■ The Trustee has drawn our attention to the case of *In re Jackson,* 93 B.R. 421 (Bkrtcy.W.D.Pa.1988), which case concerns whether or not a security agreement extended to a liquor license based upon an "after-acquired property" clause in a security agreement. The court, at page 424, wrote the following:

"We have recently joined other Courts in holding that '... collateral types listed in a financing statement may restrict the security interest created ...'; however, '... said classifications cannot have the effect of enlarging the security interest.' *In re Guterl Special Steel Corp.,* 91 B.R. 721 (Bankr.W.D.Pa.1988). *See also, Mitchell v. Shepherd Mall State Bank,* 324 F.Supp. 1029 (W.D.Okla.1971), *aff'd* 458 F.2d 700, 10 U.C.C.Rep.Serv. 737 (10th Cir.1972); *In re Platt,* 257 F.Supp. 478, 3 U.C.C.Rep.Serv. 275 (E.D.Pa.1966); *In re Marta Cooperative, Inc.,* 74 Misc.2d 612, 344 N.Y.S.2d 676, 12 U.C.C.Rep.Serv. 955 (Nassau Cty 1973)." *In re Jackson, supra* at page 424.

We find this reasoning compelling, especially in this case, when the financing state-

ment gives, in essence, false notice as to the extent of the security agreement.

The financing statement in question does meet the basic Section 9–203(1)(b) requirements of a writing signed by the debtor describing the collateral. As the *Bollinger* court, *supra,* indicates, the "financing statement provides only an inferential basis for concluding that the parties intended a security agreement." See *Matter of Bollinger, supra* at page 928. While *Bollinger* and *Hance, supra,* both found that the parties intended to create a security interest by a reading of a financing statement and other supporting documents, the court cannot make that leap of faith as requested by the Bank in this case.

For all the foregoing reasons, the court will sustain the objection filed by the Trustee but only to the extent that the Bank does not have a secured interest in the proceeds of the litigation currently held by the Trustee.