**SEARS, ROEBUCK AND COMPANY, Plaintiff–Appellant,**

v.

**Richard D. SILCH, Defendant– Respondent.**

**No. 19882.**

Missouri Court of Appeals, Southern District, Division Two.

May 30, 1995.

M. Catherine Hartnett, Thomas N. Lane, Merrick Baker Hufft & Strauss, Kansas City, for plaintiff-appellant.

Sidney T. Pearson, III, St. James, for defendant-respondent.

GARRISON, Presiding Judge.

Sears, Roebuck and Company (Sears) filed a replevin suit against Respondent, Richard Silch (Respondent), seeking possession of a camcorder. It appeals from the entry of a summary judgment in favor of Respondent. The issue is whether Respondent signed a valid security agreement in favor of Sears covering the camcorder.

Respondent purchased the camcorder at Sears on May 19, 1990 by charging it to his Sears charge account. Sears contends that

the sales ticket made at that time constituted a valid security agreement. Printed on the face of the ticket was the following:

> This credit purchase is subject to the terms of my SearsCharge Agreement which is incorporated herein by reference and identified by the above account number. I grant Sears a security interest or lien in this merchandise, unless prohibited by law, until paid in full.

Respondent's signature appears immediately below that language on the sales ticket. The ticket also contained the brand name of the camcorder and a stock number.

Following the purchase and delivery of the camcorder to Respondent, he apparently filed a Chapter 7 bankruptcy proceeding and was eventually discharged. Thereafter, Sears filed the instant petition in replevin in which it sought possession of the camcorder.[1] It also filed a motion for summary judgment supported by the affidavit of its Bankruptcy Manager in the Special Accounts Department. The affidavit recited the purchase of the camcorder through the use of Respondent's credit account, the language of the sales ticket, the bankruptcy filing and the fact that no attempt was made to avoid its security interest, the balance of Respondent's credit account with Sears, and Respondent's failure to redeem the camcorder by paying Sears its reasonable value.

Respondent filed a response to Sears' motion, essentially alleging that the only issue was whether there was a valid and enforceable security interest in the camcorder and that the sales ticket did not constitute a valid security agreement. On the same day, Respondent filed his own motion for summary judgment alleging that the sales ticket did not constitute a valid and enforceable security agreement. This appeal arises from the trial court's order sustaining that motion.

As we glean Sears' sole point relied on, it contends that the trial court erred in granting Respondent's motion for summary judgment because there was a valid and enforceable security interest in its favor by reason of the sales ticket. We reverse and remand.

 In considering an appeal from the entry of a summary judgment, an appellate court reviews the record in the light most favorable to the party against whom the judgment was entered. *ITT Commercial Finance v. Mid–Am. Marine,* 854 S.W.2d 371, 376 (Mo. banc 1993). The party against whom the summary judgment was entered is accorded the benefit of all reasonable inferences from the record. *Id.* Because the trial court's judgment is founded on the record submitted and the law, we need not defer to its order granting summary judgment. *Id.* Review is essentially *de novo* and the criteria on appeal concerning the propriety of a summary judgment are the same as should be employed by the trial court. *Id.*

 The parties agree that the controlling issue here is whether the sales ticket constituted a valid security agreement which resulted in Sears having an enforceable security interest in the camcorder. Section 400.9–203 [2] provides, in pertinent part:

> (1) ... a security interest is not enforceable against the debtor or third parties with respect to the collateral and does not attach unless
>
> (a) ... the debtor has signed a security agreement which contains a description of the collateral....
>
> (b) value has been given; and
>
> (c) the debtor has rights in the collateral.
>
> (2) A security interest attaches when it becomes enforceable against the debtor with respect to the collateral. Attachment occurs as soon as all of the events specified in subsection (1) have taken place unless explicit agreement postpones the time of attaching.

In the instant case, there is no dispute that Sears delivered the camcorder to Respondent who took possession of it as owner.

---

1. There is no issue raised about whether the bankruptcy discharge affected the right of Sears to pursue possession of the camcorder based on the theory that it has a valid security interest. *See Hupp v. Murphy Finance Co.,* 502 S.W.2d 345, 351–352 (Mo.1973); *Kenny's Tile & Floor Covering, Inc. v. Curry,* 681 S.W.2d 461, 470 (Mo.App.W.D.1984).

2. All references to statutes are to RSMo Cum. Supp.1989.

There is no issue, therefore, with respect to the requirements of § 400.9–203(1)(b) and (c). The issue is whether (a) was satisfied.

In *Shelton v. Erwin,* 472 F.2d 1118, 1119 (8th Cir.1973), the court applied Missouri law in holding that certain documents did not constitute a security agreement under the Uniform Commercial Code (UCC). The court held that § 400.9–203(1)(b), which is now (1)(a), requires three elements: (1) debtor's signature; (2) a "security agreement"; and (3) description of collateral. *Id.* There, as in the instant case, the only issue was whether the documents constituted a "security agreement."

Section 400.9–105(1)(*l* ) defines a "security agreement" as "an agreement which creates or provides for a security interest." In *Bradley v. K & E Investments, Inc.,* 847 S.W.2d 915, 921 (Mo.App.S.D.1993), this court said that "[a]lthough no precise words are required by the statutory definition of *security agreement,* the definition indicates there must be some language in the agreement that actually conveys a security interest." In the instant case, the sales ticket signed by Respondent stated that he granted "Sears a security interest or lien in this merchandise, unless prohibited by law, until paid in full."

Respondent cites *Grinnell Co., Inc. v. Farm & Home Savings & Loan Ass'n,* 75 S.W.2d 409, 411 (Mo.App.S.D.1934), for the proposition that "[t]he character of the instrument itself must be determined from the parties' intentions as gathered from the four corners of the contract." He argues that the sales ticket does not set out the terms of the agreement, "parameters" or "consequences" of default, whether each item purchased stands for only its own debt or secures all debt to Sears, or the method of allocating payments on the account between different items purchased. He notes that whether the "SearsCharge Agreement," which was incorporated by reference in the sales ticket, contained such information is unknown because it was not produced and there was no indication of its terms.

Respondent cites no authority for the proposition that a valid security agreement under the UCC must contain all such information. *In re Hardage,* 99 B.R. 738, 742 (Bkrtcy.N.D.Tex.1989), however, involved the validity of a similar sales ticket as a security agreement where the underlying Sears charge agreement was not produced. There, the debtor purchased personal property from Sears and signed a sales ticket which included the following: "I agree that Sears retains a security interest under the Uniform Commercial Code in the merchandise purchased until fully paid." *Id.* at 739. The court, noting that no special words or form is required to show a possible security interest, held that the sales ticket was sufficient as a security agreement for the items purchased.

In the instant case, the sales ticket contained language expressly conveying a security interest. There being no issue about the signature of Respondent on the sales ticket or the sufficiency of the description of the collateral, it complied with the requirements of a security agreement. Respondent was not, therefore, entitled to a summary judgment.

The order of the trial court granting Respondent's motion for summary judgment is reversed and the case is remanded to the trial court.

PREWITT and PARRISH, JJ., concur.