SEARS, ROEBUCK AND COMPANY, Plaintiff-Appellant, v. DAYNA CONRY *et al.*, Defendants-Appellees.

Third District    Nos. 3—00—0252, 3—00—0253 cons.

Opinion filed May 4, 2001.

Melissa Uzzell, of Blatt, Hasenmiller, Leibsker & Moore, of Normal, for appellant.

Gerald L. Hall, of Pekin, for appellees.

JUSTICE BRESLIN delivered the opinion of the court:

The defendants, Dayna Conry and Mary Plotts, failed to make payments for consumer goods that they purchased from Sears, Roebuck and Company (Sears) on Sears credit card accounts. After the defendants' debts were discharged in bankruptcy, Sears sued to take possession of its collateral, asserting that it had a purchase money security interest in the merchandise. 810 ILCS 5/9—107 (West 1998). The trial court ruled Sears had failed to prove that the defendants entered into a security agreement with Sears. Sears' motion to reconsider was denied. We reverse and hold that a security interest was adequately proven by Sears when it produced the defendants' signed credit card sales receipts incorporating a Sears security agreement by reference and stating that the buyers granted Sears a security interest in the merchandise.

## BACKGROUND

During 1998, the defendants purchased various consumer goods from Sears on Sears credit card accounts. After the defendants failed to make payments on their accounts, Sears sued to replevy the goods from the defendants in separate cases. The defendants each filed for chapter 7 bankruptcy (11 U.S.C. § 701 et seq. (1994)) and did not reaffirm these credit card debts with Sears. After the bankruptcies were discharged, Sears sued to exercise its right to obtain possession of the goods by virtue of its purchase money security interest in the merchandise as collateral.

After the cases were consolidated, the court heard evidence and arguments on the merits. Dennis Neuroth testified that he was employed by Sears in the bankruptcy recovery department. He explained how a customer opens a Sears credit card account. The customer fills out an application, sends it to Sears for review, and if approved, the customer receives a Sears credit card. The application

form contains the Sears security agreement. When the credit card is sent to the customer, it is accompanied by a copy of the security agreement. Sears periodically updates the security agreement and sends a copy of the update to the credit card holder.

When a customer purchases consumer goods using a Sears credit card, the customer signs a sales ticket that describes the merchandise and contains language granting Sears a purchase money security interest in the merchandise. The customer's signature is recorded electronically by a Sears computer, and the signed sales receipt is retained by the customer.

Neuroth identified electronically generated copies of the sales receipts that had been signed by the defendants for the goods Sears was seeking to recover. Immediately above the defendants' signatures on each of these receipts was printed the following language, "Purchased under my Sears account and security agreement, incorporated by reference. I grant Sears a security interest in this merchandise until paid, unless prohibited by law."

Neuroth also identified an exhibit that is entitled "Sears National Bank[,] Sears card account and security agreement." He testified that this exhibit was a copy of the security agreement that went into effect on September 1997. The copy of the Sears security agreement in the record includes the designation "9/97."

On cross-examination, Neuroth stated that he believed the next update of the security agreement was in 1999. He conceded that he had produced neither signed credit card applications nor signed security agreements for the defendants. He stated that he did not know when the defendants' accounts were opened. He did not know if the defendants' credit card applications included language indicating that the applicants agreed to accept each new version of the security agreement that Sears might send to them. Neuroth testified that it was standard operating procedure that purchases made on a Sears credit card were made under the terms of the security agreement then in force. However, he could not point to specific language in a prior agreement binding the defendants to the agreement offered in the exhibit.

The court's written order found that although the court agreed with Sears' " 'composite document' theory, the court [felt] that there must be some proof presented that the defendants had, in fact, entered into the underlying credit card agreement." The order stated that such "proof [was] lacking in this case." Accordingly, the court entered judgment for the defendants. After Sears' motion for reconsideration was denied, Sears appealed. Neither Conry nor Plotts submitted appellee briefs on appeal.

## STANDARD OF REVIEW

In reviewing the trial court's conclusions of law, the reviewing court applies a *de novo* standard of review. *Zeitz v. Village of Glenview*, 304 Ill. App. 3d 586, 710 N.E.2d 849 (1999).

## ANALYSIS

■A security interest is an interest in personal property or fixtures that secures payment or performance of an obligation. 810 ILCS 5/1—201(37) (West 1998). A security agreement is an agreement that creates or provides for a security interest. 810 ILCS 5/9—105(1)(l) (West 1998). A security interest is a purchase money security interest to the extent that it is taken or retained by the seller of the collateral to secure all or part of its price. 810 ILCS 5/9—107(a) (West 1998). Such an interest is not enforceable against the debtor with respect to the collateral and does not attach unless the debtor has signed a security agreement which contains a description of the collateral, value has been given, and the debtor has rights in the collateral. 810 ILCS 5/9—203(1) (West 1998). A security interest attaches when it becomes enforceable against the debtor with respect to collateral. Attachment occurs as soon as all of the events specified in subsection (1) above have taken place unless explicit agreement postpones the time of attaching. 810 ILCS 5/9—203(2) (West 1998).

On appeal, the narrow issue is whether Sears proved that it retained a purchase money security interest in the consumer goods purchased by the defendants. More specifically, the issue revolves around whether the testimony of Neuroth, the signed Sears credit card sales receipts, and the unsigned Sears security agreement provided sufficient proof of Sears' security interest in the goods.

This case appears to be one of first impression in Illinois. But other courts have ruled that signed Sears sales receipts or invoices with identical or similar language to the sales receipts in this case provided sufficient proof of such a security interest. These cases also arose under statutes identical or similar to the Illinois statutes under article 9 of the Uniform Commercial Code (810 ILCS 5/9—101 *et seq.* (West 1998)) regarding security interests.

In *Sears, Roebuck & Co. v. Silch*, 899 S.W.2d 153 (Mo. Ct. App. 1995), the Missouri appellate court found that where Sears failed to produce a signed security agreement, a signed Sears sales ticket containing language expressly conveying a security interest complied with the statutory requirements of a security agreement. Likewise, the court in *In re Hance*, 181 B.R. 184 (Bankr. M.D. Penn. 1993), held that in the absence of a signed security agreement, signed Sears sales checks contained sufficient language to demonstrate the parties' inten-

tion to grant a security interest to Sears. See also *In re Wiegert*, 145 B.R. 621 (Bankr. D. Neb. 1991), *In re Hardage*, 99 B.R. 738 (Bankr. N.D. Tex. 1989), and *In re Tillery*, 124 B.R. 127 (Bankr. M.D. Fla. 1991), for similar results.

■ In the instant case, the defendants signed Sears credit card sales receipts incorporating a security agreement by reference and granting Sears a security interest in the items purchased. By analogy with the cases cited above, the signed Sears credit card receipts satisfied the Illinois statutory requirement of a signed security agreement. Therefore, we hold that the trial court erred as a matter of law by denying Sears' motion for reconsideration.

## CONCLUSION

For the foregoing reasons, we reverse the ruling of the Tazewell County circuit court and hold that Sears has a valid purchase money security interest in the merchandise purchased on the defendants' Sears credit cards.

Reversed.

HOMER, P.J., and HOLDRIDGE, J., concur.